WILLIAM J. McCARTHY COMPANY *vs.* ALVAN T. FULLER.

Suffolk.    November 18, 1918. — January 2, 1919.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Contract,* What constitutes.

In an action by a corporation for the breach of an alleged contract to sell and deliver to the plaintiff a Packard motor truck, it appeared that the contract was in writing and was signed by the president of the plaintiff and by a salesman of the defendant, to whom it was delivered after its execution. When the contract was offered in evidence at the trial, there was written in typewriting below the signature of the plaintiff's president these words: "Not valid unless countersigned by an executive of the Packard Motor Car Co. of Boston." The contract was not so countersigned. The plaintiff's president testified in regard to these words, that when the contract was signed he "did not see anything there and didn't know whether they were there, or not." The defendant's salesman testified that he saw no change in the contract and specifications "from the time

Mr. S [the plaintiff's president] signed them." *Held,* that the plaintiff was entitled to go to the jury, who might refuse to believe the testimony of the defendant's salesman to the effect that there had been no change in the contract, and on the testimony of the plaintiff's president, that he did not see the typewritten words below his signature, could find that they were not a part of the contract when it was signed, notwithstanding the witness's further statement that he did not know whether the words were there or not.

In the case above described it was *said* that, in view of the decision stated above, it was unnecessary to consider whether there was evidence that the requirement of the signature of an executive officer was waived by the defendant.

CONTRACT against Alvan T. Fuller, doing business under the name Packard Motor Car Company of Boston, for the breach of an alleged contract to sell and deliver a Packard motor truck to the plaintiff. Writ dated September 4, 1915.

In the Superior Court the case was tried before *White,* J. The evidence is described in the opinion. At the close of the evidence, the defendant asked the judge to rule that upon all the evidence the plaintiff could not recover and to order a verdict for the defendant. The judge so ruled and ordered and by agreement of the parties reported the case for determination by this court, with the stipulation that, if such ruling and order were right, judgment should be entered on the verdict for the defendant; if the case ought to have been submitted to the jury, judgment was to be entered for the plaintiff in the sum of $400 and taxable costs.

*J. E. Crowley,* for the plaintiff.

*R. J. Cram,* for the defendant.

CARROLL, J. This is an action of contract to recover for the defendant's failure to deliver a motor truck.

There was evidence that Sullivan, the plaintiff's president, negotiated with a salesman of the defendant, named Sawyer, for the purchase of a "Packard truck;" that later he saw a salesman named Kimball and the written contract in evidence was signed by Sullivan and Kimball; that this contract was delivered to the latter, and, when offered at the trial, contained in typewriting below the plaintiff's signature these words: "Not valid unless countersigned by an executive of the Packard Motor Car Co. of Boston." The contract was not so countersigned.

Sullivan testified, referring to the words, "Not valid unless countersigned by an executive of the Packard Motor Car Co. of Boston," that when the contract was signed he "did not

see anything there and didn't know whether they were there or not." On the day following the execution of the contract the plaintiff received a letter from Kimball saying that one Prime, a sales manager and executive officer of the defendant, "tells me everything is O. K. and he is now making arrangements for the body with the Woonsocket Wagon Co." Kimball testified that when the contract was shown to Prime he said, "the transaction was good work;" that the letter showing Prime's approval was written in Prime's office and that he told Kimball to notify Sullivan that "the contract was all right." Kimball further testified that he saw no change in the written contract and specifications "from the time Mr. Sullivan signed them." The case is here on the report of a judge of the Superior Court.

The jury could have refused to believe the evidence of Kimball to the effect that there was no change in the contract after it was signed; they could have believed the evidence of Sullivan that he did not see the typewritten words below his signature and on this evidence could have found that these words were not a part of the contract when it was signed. They could have so found, notwithstanding Sullivan's further testimony that he did not know whether the words were there or not. The latter statement was not necessarily inconsistent with the former statement that "he did not see anything there." Plainly it was a question for the jury to decide how far, if at all, Sullivan's testimony was to be believed; and what part of it was to be relied on and what part of it was to be rejected. If they believed that the words requiring the signature of an executive officer were not a part of the contract when signed by Sullivan and Kimball, they could have found for the plaintiff.

As there was evidence of a breach of the contract binding upon the parties, it becomes unnecessary to discuss the question of the waiver by Prime of the stipulation requiring the signature of an executive officer, even if this stipulation were a part of the contract when signed.

The statute of frauds is alleged in the answer, but this defence has not been argued and we treat it as waived.

As the case should have been submitted to the jury, according to the report judgment is to be entered for the plaintiff for $400 and taxable costs.                                    *So ordered.*